IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEONOR SEDILLO SALGADO,           )
                                  )
              Plaintiff,          )
                                  )
       v.                         )         Civil No.  15-1023-JAR
                                  )
CAROLYN W. COLVIN,                )
ACTING COMMISSIONER OF            )
SOCIAL SECURITY,                  )
                                  )
              Defendant.          )

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant

Commissioner of Social Security denying Plaintiff Leonor Salgado's application for

supplemental security income benefits under Title XVI of the Social Security Act.[1]  The Court

affirms the decision of the Commissioner, because the Court finds that substantial evidence

supports the decision that the in-kind food and shelter Plaintiff received from her sons was not a

bona fide loan, such that Plaintiff was not eligible to receive supplemental security income

benefits effective August 1, 2012.

## I.      Procedural History

On April 13, 2011, Plaintiff protectively applied for supplemental security income; that

application and her March 5, 2011 application for a period of disability and disability benefits

both claimed a disability onset date of March 5, 2011.  Defendant Commissioner determined that

Plaintiff was disabled beginning March 5, 2011, and there is no issue that Plaintiff continues to

be eligible for disability benefits.  Defendant Commissioner also determined that Plaintiff was

---

[1]42 U.S.C. §§ 1381–1383f.

eligible for Supplemental Security Income ("SSI"), and Plaintiff received SSI from April 2011 through July 2012.

On July 16, 2012, Defendant Commissioner issued an Initial Determination advising Plaintiff that she would no longer be eligible for SSI payments beginning in August 1, 2012, because she had excess income comprised of ongoing in-kind support and maintenance, and monthly disability insurance benefits.  This decision was affirmed on September 19, 2012, upon reconsideration, and after a hearing before an ALJ in January 2013.  The Appeals Council reviewed additional evidence submitted by Plaintiff after the ALJ hearing, found it was not new evidence, and thus denied Plaintiff's request to review.  Plaintiff then timely filed this appeal.

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III.    Legal Standards and Analytical Framework

SSI is a needs-based program, and, therefore, only available for aged, blind or disabled

---

[2]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[4]*Id.*

individuals who meet statutory income and resource limits.[5]  Income generally refers to anything an individual receives in cash or in-kind that can be used to meet needs for food and shelter.[6] Food and shelter furnished to an individual are counted as income.[7]

However, when food and shelter are provided under the terms of a bona fide loan agreement, they are not counted as income, for loan proceeds are not considered income.[8]  It is the claimant's burden to prove the existence of a bona fide loan agreement.[9]  A loan means an advance from a lender to borrower that the borrower must repay.[10]  The loan agreement may be written or oral as long as it is bona fide and enforceable under state law.[11]  When money or an in-kind advance in lieu of cash is given and accepted based on any understanding other than that it is to be repaid by the receiver, there is no loan involved for SSI purposes.[12]

Under Defendant Commissioner's policy, there are five requirements for establishing a bona fide loan of in-kind support: (1) the loan must be enforceable under the applicable state law; (2) the loan agreement must be in effect at the time the lender provides the in-kind support

---

[5]42 U.S.C. §§ 1381a, 1382; 20 C.F.R. § 416.110.

[6]20 C.F.R. § 416.1102.

[7]42 U.S.C. § 42 U.S.C. § 1382(a)(2)(A); 20 C.F.R. § 416.1121(h)

[8]20 C.F.R. § 416.1103(f); *see also* SSA Program Operations Manual System ("POMS") SI 00835.482 (available at https://secure.ssa.gov/apps10/); *Washington Dep't of Soc. Servs. v. Keffeler*, 537 U.S. 371, 385 (2003)(explaining POMS is "the publicly available operating instructions for processing Social Security claims . . . While these administrative interpretations [POMS] are not products of formal rulemaking, they nevertheless warrant respect." ).

[9]Social Security Ruling (SSR) 92-8, 1992 WL 466905, at *3 (1992).

[10]*Id.* at *2.

[11]*Id.*

[12]*Id.*; *see also* POMS SI 01120.220C.

to the borrower; (3) the in-kind support must be given and accepted based on the understanding that it is to be repaid by the borrower (and the obligation to repay cannot be contingent on future income that might be paid, such as receipt of benefits); (4) there must be a plan for repayment reflecting the value of the food or shelter being borrowed and the specific repayment terms; and (5) the repayment plan must be feasible.[13]

## IV.    Discussion

Plaintiff contends the ALJ erred in determining that Plaintiff did not enter into bona fide loan agreements with her sons, Juan and Sergio Almazan, for the in-kind food and shelter she received while living with her son Juan.  Plaintiff and her son Juan testified that in October 2011, when Plaintiff began living with Juan, they agreed that monies Juan expended on Plaintiff's behalf for rent, food and utilities were monies that Juan was loaning Plaintiff.  They also testified that they agreed that when Plaintiff received lump sum back payments and future payments for disability and SSI, she would repay Juan.

But as the ALJ found, other than their testimony, there was no evidence that Plaintiff and her sons had entered into a bona fide loan agreement at the time Plaintiff commenced living with Juan.  There was no written loan agreement, nor any documentation of the amounts expended and loaned to her.  At the hearing, Juan presented evidence that he and Plaintiff lived in a house that was rented by a relative who also lived there.  The relative leased the house for  $850 a month; Juan sub-leased part of the house from that relative for $425 a month.  This sublease was not documented in writing.   Juan further testified that he and his mother paid half of the household utilities, to the tune of $430 to $450 a month.  When the ALJ pressed Juan for further

---

[13]POMS SI 00835.482B

itemization or documentation, he demurred, testifying that his wife handled the calculations. Yet, a loan agreement must include a specific plan or schedule for repayment based on the value of the food and shelter provided.[14]

Plaintiff and Juan further testified that Plaintiff had fully repaid $1000 loaned to her by her son Sergio, as evidenced by two money orders dated in November 2012, in the total amount of $1000.  Plaintiff and Juan further testified that she had partially repaid Juan, as evidenced by four money orders dated in January 2013, in the total amount of $2000; later, Juan testified that Plaintiff had repaid him another $1000.  But, Plaintiff and Juan's testimony about the total amount Plaintiff had borrowed from Juan was inconsistent.  Juan testified that he did not know how much he lent his mother.  After the hearing, he submitted a statement that he had lent his mother a total of $6157.72, while Plaintiff had testified that he loaned her $5200.

Aside from these conflicting accounts of the monies lent and repaid, the ALJ was troubled that there was no clear documentation presented that Plaintiff had in fact paid these amounts to her sons.  The money orders did not show who purchased the money orders, nor to whom the money orders were remitted.  Nevertheless, the record now includes additional evidence Plaintiff presented to the Appeals Council after the adverse ruling by the ALJ.  This additional evidence includes bank deposits largely matching the amounts of the money orders and coinciding with the dates of the money orders.[15]  Although the deposit slips do not identify the bank account holder, this evidence tends to show that Juan deposited in his bank account, amounts largely matching the amounts of the money orders in January 2013; and although

---

[14] POMS SI 00835.482B.4.

[15] Also included are documents evidencing that the actual lessee paid $850 in monthly rent.

Plaintiff testified that the November money orders went to pay her son Sergio, Juan deposited amounts matching these money orders in November 2012, as well.  Moreover, Plaintiff received retroactive disability and SSI payments that enabled her to pay her sons these sums in November and January.

But as the ALJ pointed out in explaining why she discredited the testimony of Plaintiff and Juan about their so-called loan agreement, there was strong evidence that until Plaintiff was aware that this in-kind support rendered her ineligible for SSI, Plaintiff never mentioned that her in-kind support was by virtue of a loan.  Indeed, on or about July 6, 2012, Plaintiff completed a form, reporting to the Social Security Administration that as of October 2, 2011: (1) she was living with her son, Juan, who was renting the home where they lived; and (2) she was "not receiving any food or shelter from the people I live with for which I have an agreement to repay. Not until after she was aware that her SSI eligibility was ending effective August 1, 2012, did Plaintiff report receiving a loan from her sons.

It is of course the province of the ALJ to make determinations of credibility, not the province of the Court.  The Court declines to weigh the evidence and make its own credibility determinations.[16]  But, the Court notes that even though the ALJ did not have the benefit of Juan's bank records, the ALJ had more than sufficient reason to discredit the testimony and other evidence offered.   From the inconsistencies in Plaintiff and Juan's account of the terms of their "agreement," to Plaintiff's prior statements denying the existence of any loan, the ALJ's

---

[16]*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." (citation and quotation omitted)).

credibility determination was based on substantial evidence.  The ALJ reasonably questioned the discrepancies in Plaintiff's statements and found they undermined Plaintiff's claims regarding the existence of a loan.[17]

The ALJ was not persuaded, and the Court certainly is not, by Plaintiff's suggestion that she was unable to correct her July 6, 2012 statement within the ten days allowed for corrections because on July 16 she received a notice regarding her ineligibility for SSI.  In fact, this notice should have prompted her to correct her July 6 statement, if in fact it had been incorrect. Further, as Defendant posits, even at the hearing, Plaintiff did not dispute the accuracy of the July 6, 2012 summary.  She testified that she explained "all of these living arrangements" when she had her SSI update; but she did not directly address the July 6, 2012 statement, state it was inaccurate, or claim—as she does now—that she did not believe it could be corrected following receipt of the July 16, 2012 notice.

Moreover, although Plaintiff did receive retroactive payments that enabled her to pay her sons, there was no evidence that at the time of the so-called loan agreement, Plaintiff had a guaranteed way of repaying the loan; at best, she had a hope and expectation.  To be sure, a claimant can show that a repayment was feasible based on an anticipated repayment from social security proceeds.[18]  But, as the ALJ noted, at the time Plaintiff claims she first agreed to repay her sons, she was living in Arizona, working and not receiving disability benefits at all.  Plaintiff testified that she merely told her sons that she would pay them back, "From the beginning . . . he

---

[17]*See Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (finding discrepancies between claimant's prior statements about daily routine and activities and claimant's hearing testimony undermined credibility).

[18]POMS SI 01120.220D.5.

told me . . . just to go ahead and stop working . . . he would send me a certain amount of money a month to live off of, and when I got my back pay *I had told him* I would pay him back."  In this respect, the evidence does not show that a repayment plan was feasible, one of the factors considered in determining whether there was a bona fide loan.

Nor was there evidence of another factor, that there was a legal obligation to repay her sons, enforceable under Kansas law.   Instead, Plaintiff's testimony implies that she felt a moral obligation, rather than a legal obligation, to repay her sons, stating that "for me to burden them like this it hurts me. . . and I need to pay them back."[19]  And, though Juan's post-hearing statement was more specific, "[s]o it's like she was telling me as soon as she gets . . . on her two feet with all this . . . all the money I'm lending her practically she can return it back," the ALJ was not required to credit this statement in light of the earlier testimony.

## V.    CONCLUSION

For all of these reasons, the Court concludes that the decision of Defendant Commissioner was supported by substantial evidence.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's decision denying Plaintiff supplemental security benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

**Dated: March 16, 2016**

 S/ Julie A. Robinson
**JULIE A. ROBINSON**
**UNITED STATES DISTRICT JUDGE**

---

[19] *See* SI 00835.482B.3, example 1 (personal feeling of responsibility to repay is not a bona fide loan, and example 2 (conditional requirement to repay is not a bona fide loan).